**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re   MARC A. ZAID | : | Chapter 7 |
| | : | |
| Debtor | : | Bky.  No. 16-17095 ELF |
| | : | |
| MARC A. ZAID, ESQ., P.C. | : | |
| | : | |
| MARC A. ZAID, | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| JAMES DiSANTE | : | Adv.  No.  17-368 |
| | : | |
| THOMAS DiSANTE, | : | |
| | : | |
| Defendants | : | |
| | : | |

# M E M O R A N D U M

## I. INTRODUCTION

The Plaintiffs in this adversary proceeding are Marc A. Zaid ("Marc"), a practicing attorney who is the debtor in this individual chapter 7 bankruptcy case and Marc A. Zaid, Esq, P.C. ("the P.C."), Marc's professional corporation (collectively, "the Zaids").  The Defendants, James DiSante and Thomas DiSante (collectively, "the DiSantes"), are former clients of the Zaids.

In 2013, the DiSantes sued the Zaids for legal malpractice in the Court of Common Pleas, Montgomery County ("the C.P. Court").  The parties subsequently agreed to submit their dispute to private arbitration through the alternative dispute resolution provider known as JAMS.  The

arbitration resulted in an award in favor the DiSantes. By order dated September 16, 2016, the C.P. Court confirmed the arbitration award and entered a judgment in the DiSantes' favor in the amount of $472,579.94 (plus 6 % interest running from July 1, 2016).

In this adversary proceeding, the Zaids ask the bankruptcy court to modify or set aside the arbitration award and the C.P. Court judgment on the ground that the award and judgment were obtained by false representations that rise to the level of fraud. In support of this claim, they invoke the Federal Arbitration Act, 9 U.S.C. §§1 et seq. ("the FAA").[1]

On January 18, 2018, the DiSantes filed a motion to dismiss the complaint ("the Motion") based on the following grounds:

- lack of subject matter jurisdiction based on the Rooker-Feldman doctrine;
- res judicata;
- lack of standing because only the chapter 7 trustee may assert this claim;
- lack of timeliness under the FAA;
- failure to state a plausible claim for relief, see Fed. R. Bankr. P. 12(b)(6).

For the reasons set forth below, I will grant the Motion and dismiss the Complaint for lack of subject matter jurisdiction based on the Rooker-Feldman doctrine.

---

[1] In the Complaint, the Zaids allege that the arbitration was conducted according to the JAMS Rules and Procedures and that Rule 20 states: "Proceedings to enforce , confirm or vacate an Award will be controlled by and conducted in conformity with the Federal Arbitration Act . . . or applicable state law." (Complaint ¶ 38-39).

The DiSantes have not disputed the Zaids' contention that the FAA provides the applicable source of law in this matter.

## II. PROCEDURAL HISTORY

On October 6, 2016, Marc filed a voluntary petition under chapter 7 of the Bankruptcy Code. On November 7, 2016, James DiSante and Thomas DiSante filed separate proofs of claim, each asserting a claim for $480,114.90. (See Proofs of Claim Nos. 1 & 2).

Aside from the instant adversary proceeding, two (2) other adversary proceedings are pending in the chapter 7 case, both filed by the chapter 7 trustee ("the Trustee"). In Adv. No. 17-316, filed on October 24, 2017, the Trustee objects to Marc's discharge pursuant to 11 U.S.C. §§727(a)(2)(A), (a)(2)(B), (a)(4)(A), (a)(4)(B) and (a)(7). In Adv. No. 17-364, the Trustee seeks to set aside various alleged transfers from Marc to his wife, son, family trust and a limited partnership pursuant to 11 U.S.C. §§544, 548.

On December 6, 2016, the P.C. filed a chapter 11 case in this court (Bky. No. 16-18429). The chapter 11 case was dismissed on November 8, 2017.

On December 15, 2017, the Zaids commenced this adversary proceeding.

## III. THE COMPLAINT

### A. The Zaids' Factual Allegations

According to the Complaint,[2] the DiSantes are the sole shareholders of Orth Enterprises, Inc. ("Orth"). In 2005-07, the Zaids represented the DiSantes and Orth in connection with a loan refinancing and restructuring transaction involving multiple parties ("the Transaction"). Orth was

---

[2] The DiSantes' motion challenges the court's subject matter jurisdiction by facially attacking the Complaint, as distinguished from a factual attack. As such, the court accepts as true the facts alleged in the Complaint for purposes of ruling on the motion under Fed. R. Civ. P. 12(b)(1). E.g., In re Boltz-Rubinstein, 574 B.R. 542, 547 (Bankr. E.D. Pa. 2017) (citing cases).

a lender in that transaction. The DiSantes contend that they, too were a lender. The borrower subsequently defaulted on the loan.

In their underlying legal malpractice claim against the Zaids, the DiSantes assert that the Zaids provided them with inadequate counseling and legal advice in connection with the Transaction. The DiSantes claim that, as a result of the malpractice, the loan documents materially limited the DiSantes' collection remedies against the defaulting borrowers, to the DiSantes' financial detriment.

The arbitration award and subsequent judgment confirming the award at issue in this adversary proceeding are based on the malpractice claim.

In this adversary proceeding, the Zaids allege that the DiSantes subverted the integrity of the arbitration by presenting materially false testimony to the arbitrator.

At the arbitration, the DiSantes sought to include in their calculation of damages loan obligations that, on the face of the loan documents, were owed to Orth, not to the DiSantes. In response to the Zaids' argument to the arbitrator that the DiSantes' proposed method of calculating damages necessitated Orth's joinder as a party to the arbitration, the DiSantes represented to the arbitrator that Orth had assigned its rights to the DiSantes and that Orth no longer existed as a corporate entity. The Zaids now assert that, in 2017, (after the entry of the arbitration award and judgment confirming the award), the DiSantes and Orth jointly filed a new state court collection lawsuit ("the 2017 Lawsuit") against the loan borrowers. In that litigation, the DiSantes stated under oath that Orth is an active and existing entity, directly contradicting the representations made earlier in the arbitration proceeding.

The Zaids also assert that the 2017 Lawsuit revealed a second misrepresentation to the

arbitrator. The Zaids state that the remedy invoked by the DiSantes in filing the 2017 Lawsuit was a remedy that the DiSantes' previously claimed, during the arbitration, was precluded by the transaction documents due to the Zaids' malpractice.

### B. The Zaids' Legal Theory

The Zaids asserts that the DiSantes' use of inconsistent positions in different legal proceedings renders the arbitration award "unjust, inequitable and unconscionable." (Compl. ¶ 42). They ground their right to relief in §10(a) of the FAA, which provides, in pertinent part:

> In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration–
>
> (1) where the award was procured by corruption, fraud, or undue means . . . .

9 U.S.C. §10(a).

## IV. DISCUSSION

It is black letter law that a federal court, as a court of limited jurisdiction, has an independent duty to assure itself that it has jurisdiction over a case before reaching the merits of a matter. E.g., United States v. Weatherspoon, 696 F.3d 416, 421 (3d Cir. 2012); McIntyre v. Nationwide Mut. Fire Ins. Co., 2001 WL 893697, at *1 (E.D. Pa. Aug. 6, 2001).

Bankruptcy court jurisdiction is governed by 28 U.S.C. §1334(b).[3] When applicable, the

---

[3] In the Complaint, the Zaids assert that the court's jurisdiction is based on 28 U.S.C. §157(b). This is incorrect. Section 157(b) is not the source of the court's jurisdiction. Rather, that section addresses how the exercise of that jurisdiction is allocated between the district court and the
(continued...)

Rooker-Feldman doctrine, invoked by the DiSantes, serves to divest the bankruptcy court of jurisdiction that it might otherwise have exercised under 28 U.S.C. §1334(b).  See In re Knapper, 407 F.3d 573, 580 (3d Cir. 2005) (referring to the Rooker-Feldman as "divest[ing]" the court of its subject matter jurisdiction);  In re Razzi, 533 B.R. 469, 478 (Bankr. E.D. Pa. 2015) (same).

To decide the pending Motion, I will assume, without deciding, that, as a threshold matter, this court has subject matter jurisdiction under 28 U.S.C. §1334(b) of the cause of action asserted in the Complaint.[4]   I also will assume, without deciding, that Marc, a current bankruptcy

---

[3](...continued)
bankruptcy court.  See, e.g., Stern v. Marshall, 131 S. Ct. 2594, 2607 (2011) (Section 157 allocates the authority to enter final judgment between the bankruptcy court and the district court and does not implicate questions of subject matter jurisdiction); In re S.E. Hornsby & Sons Sand & Gravel Co., Inc., 45 B.R. 988, 997 (Bankr. M.D. La. 1985) (28 U.S.C. §157 assumes that federal jurisdiction will be exercised; it merely allocates the exercise of that jurisdiction between the district judge and the bankruptcy judge).

I note further that while the FAA creates federal substantive law regarding arbitration agreements covered by the statute, it does not create any independent federal-question jurisdiction under 28 U.S.C. §1331.  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 103 S. Ct. 927, 942 (U.S. 1983).  As for the bankruptcy court, to assert an FAA claim in an adversary proceeding in the bankruptcy court, a party must properly invoke federal bankruptcy jurisdiction under 28 U.S.C. §1334(b).

[4]    It is likely that the court has "related to" jurisdiction under 28 U.S.C. §1334(b), at least as to Marc's claim.

> The test for determining whether related to jurisdiction exists is
>
>> whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy*. . . .  An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

Pacor, Inc. v. Higgins, 743 F.2d 984, 994  (3d Cir. 1984) (emphasis in original) (citations omitted).

> Absent some basis for disregarding the arbitration award and state court judgment, the
> (continued...)

-6-

debtor, has standing to assert the FAA claim.[5]  Even so, I conclude that the court lacks

---

⁴(...continued)
bankruptcy estate typically would be bound by the pre-petition determination of Marc's liability under the doctrine of res judicata, effectively precluding the trustee from objecting to the DiSantes' proof of claim. See In re Young, 2008 WL 4279966, at *4 (Bankr. N.D. Miss. May 9, 2008); In re Brazelton Cedar Rapids Grp. LC, 264 B.R. 195, 199–200 (Bankr. N.D. Iowa 2001) (alternative holding); see also Razzi, 533 B.R. at 479–80.  Setting aside the arbitration award and judgment would clear the way for a claims objection which, if successful, would impact the distribution to creditors in this chapter 7 case.

It is less clear whether there is jurisdiction to consider the P.C.'s claim against the DiSantes, as that claim constitutes a claim of a non-debtor against another non-debtor.  See generally In re DeMarco, 454 B.R. 343, 347–48 (Bankr. E.D. Pa. 2011) (observing that bankruptcy courts likely lack jurisdiction to hear a non-debtor plaintiff's claims against non-debtor defendants); cf. In re J&J Towne Pharmacy, Inc., 2000 WL 568355 (Bankr. E.D. Pa. May 5, 2000) (finding that the court had related to jurisdiction because certain claims by a non-debtor plaintiff against a non-debtor defendant could reduce the plaintiff's claim against the bankruptcy estate); In re Cornerstone Residential Dev. Corp., 2000 WL 33673770, at *2 (Bankr. M.D.N.C. Jan. 19, 2000) (same).

⁵    This is a questionable assumption.

Marc likely has "constitutional" standing in that he alleges a direct injury (his liability to the DiSantes arising from their alleged misconduct), particularly because his ability to obtain a bankruptcy discharge of that liability is being challenged by the Trustee under 11 U.S.C. §727.  See generally Cottrell v. Alcon Labs., 874 F.3d 154, 162 (3d Cir. 2017) (stating the requirements for establishing constitutional standing); Jurista v. Amerinox Processing, Inc., 492 B.R. 707 (D.N.J. 2013) (same).

It is unlikely, however,  that Marc can establish that he has "prudential" standing.  In a chapter 7 case, the trustee has complete authority and discretion with respect to the prosecution and defense of any litigation of the Debtor's estate .  In re Gulph Woods Corp., 116 B.R. 423, 428 (Bankr. E.D. Pa. 1990).  In other words, the FAA claim appears to be an asset of the bankruptcy estate.  Unless another party is granted "derivative standing" by the court, see generally Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery, 330 F.3d 548, 579–80 (3d Cir. 2003) (court may authorize derivative standing in chapter 11 case); In re Prosser, 469 B.R. 228, 232 (D.V.I. 2012) (discussing derivative standing in chapter 7 cases)  – ***which has not occurred in this case*** -- the trustee is the only party with standing to assert claims of the bankruptcy estate in a chapter 7 case. See Moses v. Howard Univ. Hosp., 606 F.3d 789, 795 (D.C. Cir. 2010)  Parker v. Wendy's Int'l, Inc., 365 F.3d 1268, 1272 (11th Cir. 2004).

jurisdiction to consider the Zaids' claim under the Rooker-Feldman doctrine.[6]

### A. Rooker-Feldman: General Principles

The Rooker–Feldman doctrine derives from two (2) Supreme Court cases, Rooker v. Fidelity Trust Co., 263 U.S. 413, 415–16 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983).

The doctrine is rooted in the statutory propositions that federal district courts are courts of original, not appellate, jurisdiction and that the United States Supreme Court is the only federal court possessing jurisdiction to review final judgments of a state's highest court. See 28 U.S.C. §1257(a); Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284–85 (2005). However, Rooker–Feldman is considered a "narrow" doctrine, limited to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the [federal] court proceedings commenced and inviting [federal] court review and rejection of those judgments." Exxon Mobil, 544 U.S. at 284. As stated earlier, when applicable, Rooker–Feldman divests a lower federal court of subject matter jurisdiction that might otherwise exist.

In Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 166 (3d Cir. 2010), the Court of Appeals enunciated the following four-part test for determining whether a claim is subject to dismissal under the Rooker–Feldman doctrine:

---

[6] My approach is consistent with the principle that a federal court "has leeway 'to choose among threshold grounds for denying audience to a case on the merits,'" which may include a variety of grounds for dismissal that are "short of reaching the merits." Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 430–31 (2007) (quoting Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 585 (1999)).

> (1) the federal plaintiff lost in state court;
>
> (2) the federal plaintiff complains of injuries caused by the state-court judgments;
>
> (3) those judgments were rendered before the federal suit was filed; and,
>
> (4) the federal plaintiff is inviting the federal court to review and reject the state court judgment.

As I have observed previously, the Rooker-Feldman and res judicata doctrines are "separate, but closely related." They are difficult to distinguish from one another because both doctrines "govern the deference that one court owes to an earlier judgment." Razzi, 533 B.R. at 473 (quoting Pesek v. Witscheber, 132 F.3d 36 (Table) at *3 (7th Cir.1997) (nonprecedential)). While closely related, the doctrines differ in material ways:

- whereas res judicata is largely a matter of common law and involves the impropriety of permitting parties to have "two bites at the apple," Rooker–Feldman is based squarely on federal law and is concerned with federalism and the proper delineation of the power of the lower federal courts;

- unlike res judicata, Rooker–Feldman is not dependent on a final judgment on the merits;

- unlike res judicata, Rooker–Feldman contains no requirement that the precluded party had a full and fair opportunity to pursue its claim in the prior state-court proceeding; and

- res judicata is an affirmative defense and can be waived, while Rooker–Feldman deprives the federal court of subject matter jurisdiction and cannot be waived.

Razzi, 533 B.R. at 475-76.

### B. Application of Great Western

**1.**

In response to the DiSantes' Rooker-Feldman argument, the Zaids cite Great Western in

support of their position that the doctrine is inapplicable. To evaluate this argument, it is useful first to examine the facts of Great Western, which, in certain respects, are strikingly parallel to the facts here.

In Great Western, the underlying dispute was a legal malpractice claim that, by agreement, went to binding arbitration. The plaintiff lost the arbitration. The plaintiff then sought to undo the arbitration and subsequent judgment confirming the arbitration award in several ways.[7]

First, the plaintiff moved to set aside the arbitration award on the ground that the arbitrator had an undisclosed conflict of interest. The state court denied the plaintiff's request and was affirmed by a final judgment on appeal.

Next, while the appeal on the unsuccessful attempt to set aside the arbitration award was pending, the plaintiff filed a separate action in state court against the arbitrator and defendants' counsel raising contract and tort claims and alleging a failure to disclose the allegedly improper relationship between the arbitrator and the defendants' counsel. The state court dismissed that action based on the doctrine of collateral estoppel. The plaintiff appealed the dismissal of the action, but the dismissal was affirmed on appeal.

Finally, the plaintiff filed an action in federal court asserting claims under 42 U.S.C. §1983 for deprivation of due process, again naming the arbitrator and defendants' counsel as defendants. In the federal action, the plaintiff alleged that "the Pennsylvania state-court decisions were corrupted by the improper influence of Defendants, arising both from the Pennsylvania

---

[7] Actually, it was the plaintiff's assignee who took the actions described in the text below. However, for ease of reference, I will continue to refer to the party as "the plaintiff."

courts' reliance on [the arbitrator's] services and from Pennsylvania judges' prospect of future employment with [the alternative dispute resolution entity]." Great Western, 615 at 162.

**2.**

Based on the facts described above, the district court in Great Western dismissed the plaintiff's complaint for failure to state a claim. On appeal, the Court of Appeals affirmed the dismissal on its merits, but before doing so, evaluated whether the Rooker-Feldman doctrine deprived the court of jurisdiction. See generally Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101-02 (1998) (to avoid rendering an advisory opinion, a federal court should not reach merits unless first assured that it has jurisdiction). The court concluded that Rooker-Feldman was inapplicable.

In its decision, the Great Western court concentrated on the second and fourth prongs of the test it enunciated – that the injury must be caused by the state-court judgment and that the plaintiff must invite review and rejection of that judgment – describing them as "the two key requirements" and as "closely related." 615 F.3d at 168.

Focusing first on the "injury" requirement, the Third Circuit emphasized that, for Rooker-Feldman to apply, the plaintiff must be complaining of injuries caused by the state court judgment, as opposed to injuries caused by the defendant's actions. "The critical task is thus to identify those federal suits that profess to complain of injury by a third party, but actually complain of injury produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." Id. at 167 (quotations omitted).

The Great Western court acknowledged that application of this principle is "more

complicated when a federal plaintiff complains of an injury that is in some fashion related to a state-court proceeding, " id., but emphasized that an action is not barred by Rooker-Feldman if the injury was caused by the defendant's actions and not by the state court judgment.

The court favorably cited McCormick v. Braverman, 451 F.3d 382, 384 (6th Cir. 2006), a case in which a plaintiff asserted that the defendants engaged in fraud and misrepresentation in state court proceedings that interfered with her ownership of real property. In McCormick, the Sixth Circuit determined that the claim that the defendants procured the state court judgment through fraud and misrepresentation and abused the state court process (in various ways) was an injury independent of the judgment. "Even though the injuries of which the plaintiff complained helped to cause the adverse state judgments, these claims were 'independent' because they stemmed from some other source of injury, such as a third party's actions." Great Western Mining & Mineral Co., 615 F.3d at 168 (quoting McCormick, 451 F.3d at 393) (quotations omitted). By comparison, the Sixth Circuit determined that the plaintiff's claim that the state court's order in imposing a receivership was "illegal," was a claim that the state court judgment was the source of the plaintiff's injury and therefore, barred by Rooker-Feldman. McCormick, 451 F.3d at 393-396.

To illustrate the distinction between an injury caused by a third party and an injury produced by a state-court judgment, the Great Western court also cited with approval the Seventh Circuit decision in Nesses v. Shepard, 68 F.3d 1003 (7th Cir. 1995).

In Nesses, the federal plaintiff alleged that his losses in state court stemmed from a conspiracy among the judges and the lawyers involved in the case. The Nesses court acknowledged that, on some level, the plaintiff was attacking the ruling of the state court in

dismissing his claims (because absent the adverse judgment caused by the alleged conspiracy, the plaintiff arguably had suffered no injury).  Nevertheless, the Seventh Circuit concluded that Rooker-Feldman was inapplicable.  The court reasoned that the plaintiff's claim was grounded in the actions of the individual defendants in violating his right to an impartial tribunal, a harm independent of any injury caused by the entry of the court judgment, and, further, that the violation of that independent right could be vindicated in the federal action by granting the plaintiff the damages he claimed.

**3.**

Based on the sometimes subtle distinction drawn in Great Western and related cases between an injury caused by the conduct of individual defendants that results in an adverse court judgment and harm caused by the judgment itself, the Zaids make a colorable argument that the injury they suffered derived from the DiSantes' inequitable conduct, not the entry of the state court judgment per se.  However, the argument falls short because the Zaids fail to appreciate the interrelationship between the second element of the Great Western test (injury independent of the state court judgment) and the fourth element of the test (whether the federal plaintiff is inviting the federal court to review and reject the state court judgment).

As my former colleague, Judge Fox, pointed out in a decision prior to Great Western, *"the relief sought . . .* by the federal plaintiff will be particularly significant in determining whether the Rooker–Feldman doctrine applies." In re Randall, 358 B.R. 145, 155–56 (Bankr. E.D. Pa. 2006) (emphasis in original) (quoting 18 Moore's Federal Practice, §133.30[3][c] at 133–30.11 (3d ed. 2006)).  Incorporating this point into the Great Western analysis, an

examination of the nature of the relief requested by the plaintiff may well demonstrate whether the injury complained of is the state court judgment itself and whether the federal court is being asked to review and reject the state court judgment. That is precisely the case here.

In this adversary proceeding, unlike the plaintiffs in McCormick and Nesse, the Zaids are not asking for a remedy for the alleged misconduct committed by the DiSantes, independent of the validity and effect of the C.P. Court judgment; they are not seeking monetary damages.[8] To the contrary, they are attacking the C.P. Court judgment itself, by requesting that this federal court modify or set aside that judgment.

The Zaids' request for relief reveals the true nature of the legal claim, making it abundantly clear that the C.P. Court judgment is the injury and that this federal court is being asked to review and reject it. This is precisely the type of action that the Rooker-Feldman doctrine was intended to address. The Zaids' case satisfies all four parts of the Great Western test: the Zaids, the state court losers on a cause of action reduced to a judgment prior to the commencement of a lawsuit filed in federal court, ask the federal court to set aside that final state court judgment as having been entered improperly. Accordingly, this court lacks the jurisdiction to consider the merits of this type of proceeding.

---

[8] Great Western does not mention that the McCormick plaintiff sought damages. But, the counts of the complaint held not subject to Rooker-Feldman were damage claims. See McCormick, 451 F.3d at 388.

## V.  CONCLUSION

For the reasons stated above, this adversary proceeding will be dismissed for lack of subject matter jurisdiction.

Date:  **March 6, 2018**

**ERIC L. FRANK**
**U.S. BANKRUPTCY JUDGE**